**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0172** (Jefferson County 18-F-124)

**Cornell G.,**
**Defendant Below, Petitioner**

### MEMORANDUM DECISION

Petitioner Cornell G., by counsel Jeremy B. Cooper, appeals the January 28, 2020, order of the Circuit Court of Jefferson County sentencing petitioner to an effective sentence of not less than twenty-three nor more than sixty years of incarceration and fifty years of supervised released for his convictions of one count of sexual abuse by parent, guardian, custodian, or other person in a position of trust; one count of second-degree sexual assault; two counts of third-degree sexual assault; and one count of first-degree sexual abuse.[1] Respondent the State of West Virginia, by counsel Benjamin F. Yancey, III, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on eight counts alleging he had felonious sexual contact with a twelve-year-old child ("the victim"), in March of 2018: one count of sexual abuse by parent, guardian, custodian, or other person in a position of trust; two counts of second-degree sexual assault; two counts of third-degree sexual assault; and three counts of first-degree sexual abuse. At the time of the alleged contact, petitioner was thirty-three years old. The victim is a relative of petitioner's long-time girlfriend, and the alleged contact occurred in the home petitioner shared with his girlfriend and the couple's three children.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In preparation for trial, respondent filed a notice of intent to introduce Rule 404(b) evidence[2] through the testimony of another child: the victim's older sister. The notice indicated that the victim's sister's testimony was intended to show petitioner's "motive, intent, plan, absence of mistake, and most importantly, his lustful disposition toward children." The court held a *McGinnis* hearing[3] to determine the admissibility of the testimony, and the victim's sister testified that on multiple separate occasions, petitioner had touched her buttocks and breasts, digitally penetrated her, and forced her to perform oral sex on him. At the conclusion of the hearing, the trial court deferred ruling on the admissibility of the testimony to allow the parties the opportunity to further brief the issue.

In his memorandum concerning the victim's sister's testimony, petitioner said that during the *McGinnis* hearing, "[The victim's sister] echoed much of what she had said in her forensic interview; however[,] some of the events she recounted were different with regard to important details." Petitioner stated that the victim's sister claimed in the forensic interview that the inappropriate touching occurred when she was fifteen years old and that the most recent incident of touching occurred in Fall of 2017. Petitioner asserted that these claims differed from the testimony during the *McGinnis* hearing in that she testified the touching occurred several years ago, even several years before the victim made her allegations against petitioner, when the victim's sister was living with petitioner and when the victim's sister was in elementary school or middle school. Petitioner also pointed out that the victim's sister had voluntarily gone to petitioner's home numerous times after the alleged incidents occurred and that the victim's sister had denied that petitioner had touched her inappropriately when petitioner's girlfriend initially asked her whether she had been touched by petitioner. Petitioner argued that, given the inconsistencies between the victim's sister's testimony during the *McGinnis* hearing and the statements she made during the forensic interview, the evidence was insufficient "to find that these instances of inappropriate touching occurred or that [petitioner] was the perpetrator." Respondent filed a response, stating that the victim's sister's testimony did not contain inconsistencies and asking that the trial court

---

[2] Rule 404(b) of the West Virginia Rules of Evidence permits the introduction of evidence of a defendant's other crimes, wrongs, or acts where the evidence is introduced for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

[3] *See* Syl. Pt. 2, in part, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994) ("Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.").

allow respondent to present the testimony at trial.

By order entered on August 15, 2019, the trial court granted the State's request to present the victim's sister's testimony at trial. Noting that it had reviewed the victim's sister's forensic interview, the court found:

> The State did proffer the following: The Defendant is charged with sexually assaulting [the victim], a 12-year-old female child, several times over the course of approximately a 12-hour period. The Defendant is alleged to have touched her buttocks and breasts over her clothing, digitally penetrated her vagina, sucked on her breasts and chest resulting in bruising, and forced her to perform oral sex on him. The alleged assaults occurred when they were alone in several rooms throughout a house in Jefferson County, including the kitchen, living room, master bedroom, and bedroom of Defendant's minor daughter where [the victim] was staying. [The victim] also alleges that the Defendant told her not to say anything or they would "put [her] away."

> . . . On July 11, 2019, the [c]ourt heard testimony from [the victim's sister] that the Defendant inappropriately touched her on multiple occasions beginning when she was 13 or 14 years old. [The victim's sister] testified the Defendant touched her buttocks over her clothing and moved towards her front private area. The Defendant would also try to unbuckle her pants, would kiss her neck and chest and left hickeys on her chest on more than one occasion. [The victim's sister] also testified that the Defendant tried to make her perform oral sex on him. The Defendant grabbed [the victim's sister]'s breasts under her clothing, and also digitally penetrated her. The abuse would occur throughout the home when the two of them would be alone in a room. Some of the assaults also took place in the Defendant's minor daughter's bedroom while the daughter was not around. The [Defendant] told [the victim's sister] that if she told anyone about the assaults she would be the one to get in trouble.

The trial court further found, by a preponderance of the evidence, that the acts alleged by the victim's sister occurred and that petitioner committed those acts. The court found that the victim's sister's testimony was relevant for the specific purpose of showing petitioner's lustful disposition and that the probative value of the testimony was not substantially outweighed by a danger of unfair prejudice.

Petitioner's jury trial began on August 27, 2019. The jury heard the testimony of the victim's mother, the victim, the forensic nurse examiner who examined the victim at the hospital, the victim's sister, the lead investigating police officer, two forensic scientists with the West Virginia State Police laboratory, a forensic casework director with a private DNA testing laboratory in Virginia, a crime analyst who conducted a forensic examination of the victim's mobile phone, petitioner's girlfriend, and petitioner.

The victim testified that during various encounters on the evening of March 7, 2018, and early morning of March 8, 2018, in various rooms in petitioner's home, petitioner touched her

buttocks and breasts over her clothing, digitally penetrated her vagina, sucked on her breasts and chest resulting in bruising, forced her to perform oral sex on him, and ejaculated on her face.

Testimony established that shortly after the last encounter, the victim texted a friend about what had happened. The friend advised personnel at school about what the victim had told her, and the school contacted law enforcement. Thereafter, the victim was examined by the forensic nurse examiner who swabbed and photographed the victim. The testimony of the forensic scientists with the West Virginia State Police laboratory established that petitioner's saliva was found on the swabs of the victim's breasts and that petitioner's semen was found on swabs of the victim's face and on her shirt and pants. Petitioner denied having sexual contact with either the victim or the victim's sister.

Following a mid-day break on the second day of the trial, the Court had the following discussion with the parties concerning a particular juror:

THE COURT: The bailiff has brought to my attention that there is on the back of one of the juror's shirts is written the following, whatever, slogan. It says, "Guns don't kill people but fathers with daughters do." Any issues?

MR. JONES [counsel for the State]: Not from the State, Judge.

MR. BATTEN [counsel for petitioner]: I think I do. I think I have an issue with that juror, Your Honor. And I think we probably at least need to inquire with him as to what the nature of that shirt is, what that means. I mean, he's a juror in a criminal case where allegations of sexual abuse are at issue.

MR. JONES: Well, the purpose is is [sic] we should exclude anybody that thinks sex abuse is okay so how can the fact that sex abuse or interference with one's daughter that person holds a belief that that is not okay they should be excluded from the jury? I think most fathers probably feel the same way so I don't think that that fact that somebody hurts your daughter and you get that violent type of thing that that is a reason to excuse a daughter -- or excuse a juror.

THE COURT: Mr. Jones, I think when you choose to wear it on the second day of a jury trial of this nature and we tell people not to form any opinions that there is a presumption of innocence, and honestly, I think if you, Mr. Batten, are making a motion for that juror to be excused and I'm not telling you which juror it is that is wearing that shirt then that juror is going to be excused. I don't think that you can rehabilitate that. So I'm not going to let you know who it is. You're either making the motion based upon the fact that the shirt says what it says and that will leave us with inserting the alternate juror or it does not.

MR. BATTEN: I'm going to make the motion, Your Honor, because I believe, and I will say this on the record, you know, wearing a shirt on the second day of a trial like this seems to at least implicitly advocate the extrajudicial killing of somebody who may have committed a crime is the problem.

4

THE COURT: And I don't know that I take it that far. I think the general nature is if you date somebody's --

MR. BATTEN: It can be inferred that way.

THE COURT: I know they mean multiple different things but in a case like this at this stage of the game I don't know that that is an appropriate shirt, message, whatnot.

So if I can get one of the bailiffs to bring us [the juror] and I would propose that we just bring him in separate from the rest of the jury and thank him for his service but let him know that he is being excused. If he inquires as to why, I will simply explain that the slogan on his shirt was deemed to be inappropriate for purposes of courtroom attire.

The trial court then advised the juror that he was excused from the jury. He was replaced by the alternate juror.

The jury returned its verdict on August 29, 2019. By order entered on August 30, 2019, the trial court found that, pursuant to the jury's verdict, petitioner was found guilty of one count of sexual abuse by parent, guardian, custodian, or other person in a position of trust; one count of second-degree sexual assault; two counts of third-degree sexual assault; and one count of first-degree sexual abuse. The jury acquitted petitioner of one count of second-degree sexual assault and two counts of first-degree sexual abuse.[4] Petitioner filed a motion for a new trial, arguing that the 404(b) evidence was improperly admitted to prove petitioner's lustful disposition and that the evidence was insufficient to support his conviction. The trial court denied the motion by order entered on September 24, 2019. By order entered on January 28, 2020, the trial court sentenced petitioner on each of the crimes for which he was convicted, directing that the sentences run consecutively. Petitioner received an effective sentence of not less than twenty-three nor more than sixty years of incarceration and fifty years of supervised release.

Petitioner now appeals his conviction, asserting two assignments of error. In his first assignment of error petitioner argues that the trial court erred by permitting the victim's sister to testify under Rule 404(b) for the purpose of showing petitioner's lustful disposition. He claims that the victim's sister's various accounts of sexual contact with petitioner were so inconsistent

---

[4] The conviction order states that during the jury's deliberations on August 28, 2019, petitioner failed to appear in the courtroom, having removed his GPS ankle monitor and absconded. The trial court issued a capias warrant for his arrest, directing that, upon his capture, he be incarcerated without bail. Petitioner was apprehended in Maryland later that same day. Petitioner was ultimately extradited back to West Virginia, but not before the jury returned its verdict. During allocution, petitioner referenced his decision to flee and the dismissed juror, stating, "The second day he was so bold to wear a shirt that basically made a passive/agressive [sic] threat towards my life, so yes, I had an emotional breakdown and I was afraid for my life so I left."

that the trial court could not have found, by a preponderance of the evidence, that the alleged contact did indeed occur. Specifically, he notes the same inconsistencies he raised below in his memorandum concerning the victim's sister's testimony following the *McGinnis* hearing. Petitioner also asserts that the victim's sister's accounts suspiciously mirror those of the victim, which he contends calls the victim's sister's accounts into question; that the victim's sister initially denied the abuse when asked about it by petitioner's girlfriend; and that lustful disposition toward the victim's sister, a fifteen-year-old child, is not meaningfully probative of a lustful disposition toward the victim, a twelve-year-old child.

Respondent disagrees with each of petitioner's points. Respondent asserts that any inconsistencies between the victim's sister's statements during the forensic interview and her testimony during the *McGinnis* hearing concerning her age when she was molested by petitioner were properly weighed by the trial court. Likewise, respondent states that any differences between the victim's sister's trial testimony and those she made during the *McGinnis* hearing and forensic interview were properly weighed by the jury during petitioner's trial. Respondent further states that the victim's sister's initial denial of abuse was properly weighed by the trial court, and that the victim's sister testified that the reason she initially denied that any sexual contact occurred was she did not think anybody would believe her. Respondent also asserts that the victim's sister's testimony was relevant to show petitioner's lustful disposition toward children and that the probative value of her testimony outweighed any prejudicial effect. In response to petitioner's contention that lustful disposition toward a fifteen-year-old child is not meaningful probative of lustful disposition toward a twelve-year-old child, respondent notes that both the victim and her sister were young adolescents at the time of the abuse, and petitioner was at least twice their age.

We have held:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.[5]

*State v. LaRock*, 196 W. Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (footnote added).

In the first step of our analysis, we determine that the trial court did not commit clear error in making a factual determination that there was sufficient evidence to show that the abuse of the victim's sister by petitioner occurred. Although there were differences in the victim's sister's testimony during the *McGinnis* hearing and her forensic interview, these differences were minor, they were noted by petitioner below, and they were considered by the trial court. Indeed, we have

---

[5] Rule 403 of the West Virginia Rules of Evidence provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

recognized that "children often have greater difficulty than adults in establishing precise dates of incidents of sexual abuse . . . because they obviously may not report acts of sexual abuse promptly." *State v. Edward Charles L.*, 183 W. Va. 641, 650, 398 S.E.2d 123, 132 (1990). Furthermore, although the victim's sister admitted that she initially denied being abused by petitioner, the appendix record reveals that the victim's sister's subsequent accounts of abuse were consistent throughout the proceedings as to where the abuse occurred and the specific types of abuse to which she was subjected by petitioner. Ultimately, the trial court made a credibility determination, finding the victim's sister's testimony to be credible. We must give deference to the trial court's findings "because it had the opportunity to observe the witnesses and to hear testimony on the issues." Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). According the trial court the proper deference, we do not find that the circuit court committed clear error in finding that the acts alleged by the victim's sister did in fact occur.

As for any differences between the victim's sister's pretrial statements concerning the abuse inflicted upon her by petitioner and her testimony at trial, we find that this issue has no bearing on petitioner's argument that the trial court erred by permitting the victim's sister to testify at trial. Regardless, the jury was in the best position to judge her credibility. We have said, "It is a well-established legal principle in this State that '[t]he jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.'" *State v. Martin*, 224 W. Va. 577, 582, 687 S.E.2d 360, 365 (2009) (quoting Syl. Pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967)). We find that, with regard to differences in the victim's sister's pretrial statements and her trial testimony, the trial court committed no error.

The second step of our analysis requires us to examine whether the trial court correctly found that the victim's sister's accounts of abuse by petitioner were admissible for a legitimate purpose. In this instance, the trial court determined that the evidence was admissible to show petitioner's lustful disposition toward children. In *Edward Charles L.*, we held:

> Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment.

183 W. Va. at 643, 398 S.E.2d at 125, Syl. Pt. 2, in part. The victim's sister's testimony describes acts falling squarely within the type of collateral acts deemed admissible in *Edward Charles L.* Therefore, upon our de novo review, we conclude that the trial court did not err in finding that the victim's sister's testimony was admissible for a legitimate purpose.

Finally, we must determine whether the trial court abused its discretion in concluding that the victim's sister's testimony was more probative than prejudicial. While petitioner argues that evidence of lustful disposition toward a fifteen-year-old child is not meaningfully probative of a lustful disposition toward a twelve-year-old child, under the facts of this case, we cannot agree. Petitioner has not directed us to any evidence suggesting that when they were molested by petitioner, the children were so different from each other that the abuse was rendered incomparable. Rather, the record shows that both children were young adolescents at the time of

the abuse and that petitioner was at least twice their age when he molested them. Accordingly, we conclude that the trial court did not abuse its discretion in finding that the victim's sister's testimony was more probative than prejudicial, and the victim's sister's testimony was properly admitted under Rule 404(b).

In petitioner's second assignment of error, he argues that the trial court committed plain error by failing to make the necessary record on the improper influence the dismissed juror's shirt had on the rest of the jury. He contends that the record shows that the dismissed juror, by means of the slogan on his t-shirt, engaged in an effort to communicate, contact, or tamper with other members of the jury. According to petitioner, pursuant to *State v. Sutphin*, 195 W. Va. 551, 466 S.E.2d 402 (1995), the trial court had an affirmative duty to hold a *Remmer* hearing[6] to evaluate the impact of the dismissed juror's shirt on the remaining jurors. Petitioner concedes that his trial counsel did not request a *Remmer* hearing; however, he argues that the trial court committed plain error by failing to hold such a hearing sua sponte. He also argues that the dismissed juror's misconduct should have resulted in a mistrial, despite trial counsel's failure to request a mistrial.

Respondent disagrees with petitioner's claim that the trial court committed plain error. Respondent argues that the jury's verdict—finding petitioner guilty of only five of the eight counts in the indictment—indicates that it fairly judged petitioner's claims rather than being improperly influenced by the dismissed juror's shirt. Respondent also argues that because petitioner's counsel did not make a motion for a mistrial on the basis of the dismissed juror's shirt, petitioner cannot now claim that the trial court erred by not declaring a mistrial sua sponte.

We held in *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989), that "[t]he decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." *Id.* at Syl. Pt. 8. At no time in the proceedings below did petitioner make a motion for mistrial on the ground of juror misconduct, nor did petitioner make a motion for a new trial on the ground of juror misconduct. We have said that "a motion for mistrial must be made before a verdict is returned." *State v. Corey*, 233 W. Va. 297, 310, 758 S.E.2d 117, 130 (2014). "[A] defendant who 'fails to make a timely motion for mistrial . . . waives the right to assert on appeal that the court erred in not declaring a mistrial[.]'" *Id.* (quoting Syl. Pt. 10, in part, *State v. Kays*, 838 N.W.2d 366, 370 (Neb. Ct. App. 2013)). This "raise or waive" rule "is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs." *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). The raise or waive rule "prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)." *Id.*

"[T]he raise or waive rule is not absolute." *Id.* "The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995). "To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and

---

[6] In *Sutphin*, we explained that a *Remmer* hearing is "[a] hearing (or hearings) conducted [pursuant to *Remmer v. United States*, 347 U.S. 227 (1954)] to determine whether or not any contact with a juror was prejudicial." 195 W. Va. at 558, 466 S.E.3d at 409.

(4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 7, 459 S.E.2d at 118, Syl. Pt. 7. "If these criteria are met, this Court may, in its discretion, correct the plain error if it 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *LaRock*, 196 W. Va. at 316-17, 470 S.E.2d at 635-36 (1996) (quoting [*United States v.* ]*Olano*, 507 U.S. [725, ]732, 113 S. Ct. [1770, ]1776[ (1993)]). "[W]hether to correct error remains discretionary with the appellate court." *Id.* at 317, 470 S.E.2d at 636.

Whether the trial court committed plain error by failing to declare a mistrial in this instance depends on whether, as petitioner suggests, the trial court was legally required to hold a *Remmer* hearing. An examination of our case law and the application of that law to the facts of this case reveal that the trial court had no such obligation.

In *State v. Daniel*, 182 W. Va. 643, 391 S.E.2d 90 (1990), the Court said:

> In *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), the Court held that a trial judge, following an allegation of jury contact, should "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 230, 74 S.Ct. at 451, 98 L.Ed. at 656.

> We note that the Supreme Court in [*Smith v.*] *Phillips*[, 455 U.S. 209, 102 S. Ct. 940 (1982),] held that such determinations "may", not "shall", be made at a *Remmer*-type hearing. Thus, *we do not believe that a hearing is mandatory*, although we believe that the better rule is to hold such a hearing, with all parties present and a record made, when there are allegations of jury tampering in order to fully consider any evidence of influence or prejudice.

182 W. Va. at 648 n.4, 391 S.E.2d at 95 n.4 (emphasis added).

Later, in *State v. Jenner*, 236 W. Va. 406, 780 S.E.2d 762 (2015), the Court "emphasize[d] that not every allegation of juror misconduct requires that the challenged juror be called to testify. The decision on whether to hear juror testimony depends on the facts and the accusations, and how well the accusations are supported by the moving party." *Id.* at 419 n.11, 780 S.E.2d at 775 n.11. We noted that cases generally

> fall along a continuum focusing on two factors. At one end of the spectrum the cases focus on the certainty that some impropriety has occurred. The more speculative or unsubstantiated the allegation of [juror] misconduct, the less the burden to investigate. . . . At the other end of the continuum lies the seriousness of the accusation. The more serious the potential jury contamination, especially where alleged extrinsic influence is involved, the heavier the burden to investigate.

*Id.* (quoting *United States v. Caldwell*, 776 F.2d 989, 998 (11th Cir. 1985)).

In this instance, the dismissed juror's shirt said, "Guns don't kill people but fathers with daughters do." The case did not involve gun violence, a father-daughter relationship, or an instance

of revenge. In that the shirt was irrelevant to the issues before the jury, there can be no question that it had no impact on the jury's verdict. Thus, under the specific facts of this case, the trial court was under no obligation to hold a *Remmer* hearing or order a mistrial in this case. Consequently, we conclude that the trial court did not commit plain error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 19, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton